**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:21-CV-80669-DMM**

ORTHOPAEDIC CARE SPECIALISTS, P.L.,

    Plaintiff,

v.

UNITED HEALTHCARE SERVICES, INC.,
UNITEDHEALTHCARE INSURANCE
COMPANY, and GOLDEN RULE INSURANCE
COMPANY,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Orthopaedic Care Specialists, P.L., hereby files this response to the Defendants', United Health Care Services, Inc., Unitedhealthcare Insurance Company, and Golden Rule Insurance Company (collectively referred to as "United"), Motion to Dismiss and in support of said Response, Plaintiff states the following:

**Nature of Action - Introduction**

This is an action concerning the rate at which United reimbursed the Plaintiff for emergency medical services the Plaintiff provided to patients (patient referred by as "United Members") covered under the Defendants' commercial insurance health plans. United has wrongfully paid the Plaintiff at rates below both: (1) the "usual and customary provider charges" in violation of Sections 641.513(5) and 627.64194(4), Florida Statutes. For claims subject to those sections; and, (2) below the reasonable value of the services in the marketplace required under *quantum meruit* by the implied-in-fact contract between the parties and/or the implied-in-law contract, for claims not subject to Sections 641.513(5) and 627.64194(4). This action does not

include any claims in which benefits which were denied nor does it challenge any coverage determinations under an ERISA plan.

Plaintiff is an emergency medicine group practice that staffs the emergency departments at St. Mary's Medical Center and Children's Hospital and provides emergency medical care and related services to patients, including United Members, presenting to its emergency departments. In exchange for premiums, fees and/or other forms of compensation, United pays for health care services rendered to members of its commercial health care products and platforms, or, administers and adjusts claims on behalf of employers.

The Plaintiff provided professional emergency medical services at Jupiter Medical Center and St. Mary's Medical Center and Children's Hospital to twenty-seven different United members. The initials of the United members, the claims numbers assigned by the Defendants' in processing the claims, specific injury Plaintiff alleges was emergently treated, the specific services performed, and the amounts charged and paid on each individual claim were attached to Plaintiff's Complaint and are so again herein as Exhibit "A."

With respect to the above refenced claims at issue, the Plaintiff did not and does not have applicable participation agreements with United, and the claims for reimbursement are therefore considered non-participating or out of network claims (hereinafter, "Non-Participating Claims"). Notwithstanding, the Defendant paid the claims at issue, albeit at a rate below what Florida Law requires.

**I.     Plaintiff's Complaint More than Satisfies the Notice Requirements of Rules 8 and 10.**

The Defendants remarkably argue that the spreadsheet containing twenty-seven separate and distinguishable claims attached to Plaintiff's Complaint somehow fails to provide adequate notice of the plans that give rise to Plaintiff's lawsuit.  Defendants' allegation that Plaintiff's spreadsheet "doesn't identify the plan or policy purporting to provide coverage" is a flagrant and obvious

misrepresentation to this Court. Plaintiff's Exhibit "A" specifically identifies the individual United members by initials, the dates of service, **the member ID number assigned by Defendants that corresponds to the member plan, the claim numbers assigned by the Defendants, and the dates the Explanation of Benefits (that contain both the claim numbers in Plaintiff's spreadsheet and the CPT codes for the services rendered) were issued by the Defendants.** Defendants' need not do anything other than type the claims numbers and member IDs provided in Plaintiff's Exhibit "A" into *their own* record management system to identify the plans they've already reviewed when adjudicating Plaintiff's claims and issuing the insufficient payments *for the corresponding CPT codes*. Lastly, Defendant fails to advise this Court that each Explanation of Benefits form generated by the Defendants *already contain* the exact CPT codes they claim they do not have notice of along with the corresponding claim number. (See Exhibit "B" – redacted EOB for patient R.A.G.). The CPT codes are highlighted in Exhibit "B" for ease of reference.

The data points in Plaintiff's Exhibit "A" plead more than "enough [facts] to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Defendants cannot reasonably argue they lack "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. This Court granted the Defendants' Motion for Enlargement of Time to Respond to Plaintiff's Complaint "to evaluate Plaintiff's claims with respect to each of the twenty-seven (27) members Plaintiff allegedly treated, and to fashion an appropriate response to the Complaint" on April 13, 2021.

Rather than use the time graciously given by this Court (and unopposed by the Plaintiff), the Defendants would have Plaintiff impractically cite each individual breach under identical causes of action. Such a task would be unnecessary, unduly burdensome, and duplicative. Defendants' argument is for the purposes of delay and nothing more. Defendants know which

plans are at issue and the basis for Plaintiff's right of recovery as they have certainly been able to identify which plans they wrongfully allege are preempted by ERISA from Plaintiff's spreadsheet.

**II. Defendants' Motion to Dismiss regarding patients R.A.G., J.B., and K.C. must be denied as the plans at issue are not completely or defensively preempted by ERISA as Plaintiff's claims do not relate to the plan at issue. Nor do Florida Statutes 627.64194(4) and 641.513(5) make any attempt to "regulate" ERISA plans.**

Plaintiff's Complaint clearly pled that it was addressing administered claims, and further made clear they were not subject to ERISA preemption because the claims concerned only the "rate of" payment, rather than the "right to" payment. As a result, Plaintiff's claims do not implicate federal subject matter jurisdiction under well-settled principles of ERISA preemption law, a point with which the Defendant is familiar. In fact, many similarly situated health insurance companies have unsuccessfully litigated the issue as explained and evidenced below.

This is an action brought for payment for emergency medical services and trauma-based services rendered to a patient pursuant to Florida Statutes, Fla. Stat. § 641.513(5) and Fla. Stat. §627.64914(4). Under the test set forth in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) and *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1212 (11th Cir. 1999) Plaintiff's claim exists independent of the ERISA plan. Defendant is incorrect in its assertion that Florida Statutes, §641.513 and §627.64914(4) (which adopts the identical reimbursement mandates as §641.513) only applies because of the existence of an ERISA governed health plan and that the "rate of payment" vs. "right to payment" distinction is immaterial. As the court in *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F. 3d 1337 (11th Cir. 2009) noted claims involving only the amount owed to a provider based on rate of payment would not implicate ERISA.

In this case the Plaintiff is a non-participating provider and the rate of payment for its services is set forth in Florida Statute, §641.513. In this case there is no coverage dispute and in fact Defendants have determined there is coverage and has made payments to Plaintiff on all claims

at issue. The only issue is the amount of said payments which is determined by Florida Statute, §641.513. It is undisputed that the Defendant(s), as a third-party administrator for the alleged self-funded plans, is/are responsible for making all <u>coverage and payment determinations</u>.

In conducting a preemption analysis, several circuit courts of appeals place weight on how a state law claim affects "principal ERISA entities." For example, in the Fifth Circuit, "[a] defendant pleading preemption under [Section 514] must prove that '(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.' " *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) (*quoting Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)), *aff'd en banc*, 698 F.3d 229 (5th Cir. 2012). Even within this framework, however, "[h]ealthcare providers such as physician assistants generally are not considered 'beneficiaries' or 'participants' under ERISA." *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1241 (11th Cir. 2001). *Surgery Ctr. of Viera, LLC v. Cigna Health*, 2020 WL 4227428, at *5 (M.D. Fla. 2020) (stating that the plaintiff's "status as a medical provider — as opposed to a plan participant or beneficiary — does change the result. A medical provider's claims based on conduct independent of an ERISA plan ... can be too tenuously connected to ERISA").

Florida Statute §641.513 and §627.64914(4) sets forth the method of computation and amounts owed to a non-participating provider who render emergency and trauma-based services he or she is legally obligated to perform irrespective of whether the HMO is an ERISA plan or non- ERISA plan. Plaintiff need not look at the ERISA plan in this case for the amount of payment as same is set forth by §641.513. There is nothing in §641.513 that requires the ERISA determination of a fee based upon the plan. Additionally, there is nothing in the statute that requires a co-payment. In section (4) there is a statement that a subscriber <u>may</u> be charged

a reasonable co-payment set forth in F.S. 641.31(12), not that it must be charged a copayment, and that co-payment if any, is capped by statute at $100 per visit.

There is nothing in Florida Statute, §641.513 that requires a provider to look to the ERISA plan for determination of payment. Florida Statute, §641.513(5) provides the three ways payment is determined either as (a) the provider's charges, (b) the usual and customary charge in the community for similar services or (c) an amount mutually agreed upon between the provider and the carrier. In no instance does an interpretation of this statute inextricably intertwine the ERISA plan. "A claim that 'turns largely on legal duties generated outside the ERISA context,' and 'requires only a cursory examination of the plan' is 'not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.' " *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 233 (3d Cir. 2020) (*quoting Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012)). The "mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." *Plastic Surgery Center*, 967 F.3d at 235. The fact [that] an ERISA plan is an initial step in the causation chain, without more, is too remote of a relationship with the covered plan to support a finding of preemption." *Morris B. Silver M.D., Inc. v. Int'l Longshore & Warehouse etc.*, 2 Cal. App. 5th 793, 807, 206 Cal.Rptr.3d 461 (2016).

The preemption scope of ERISA is not limitless and "the mere existence of an ERISA plan is not enough for preemption." *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994); *see also Sanson v. General Motors Corp.*, 966 F.2d 618, 621 (11th Cir. 1992) (reasoning that a state law cause of action is not preempted if it "makes no reference to, or functions irrespective of, a[n] [ERISA] plan."). Fla. Stat. § 641.513(5) and Fla. Stat. § 627.64914(4) do nothing more than regulate the price at which non-network medical providers of emergency services are to be paid. Simply put, the statutes at issue potentially increase costs for ERISA plans, but would do so without forcing plans to adopt any particular scheme of substantive coverage. Any potential cost

increase only occurs <u>after</u> the Defendant admits and acknowledges the services are covered under the plan by issuing payment.

The Supreme Court has held state laws do not have an impermissible connection to an ERISA plan because they may affect costs. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645 (1995). In *New York State*, a New York <u>state law</u> imposed a 13% surcharge on hospital billing rates for patients covered by insurers other than Blue Cross/Blue Shield. Plans that bought insurance from Blue Cross/Blue Shield paid less under the law for hospital services than plans that did not. The Supreme Court presumed the surcharges would be passed on to insurance buyers, <u>including ERISA plans</u>, which would incentivize ERISA plans to choose Blue Cross plans over other plans in New York. *Id.* at 659. The Supreme Court held that such an indirect economic influence did not create an impermissible connection between the New York law and ERISA plans because it did not bind plan administrators to any particular choice. *Id. See also De Buono v. NYSA-ILA Medical and Clinical Services Fund,* 520 U.S. 806, 816 (1997) (concluding that ERISA did not pre-empt a state tax on gross receipts for patient services that simply increased the costs of providing benefits).

Defendants omit any discussion in their Motion to Dismiss concerning the recent Supreme Court of the United States decision in *Rutledge v. Pharm. Care Mgmt. Ass'n,* No. 18-540, 2020 WL 7250098 (U.S. Dec. 10, 2020). In *Rutledge*, the State of Arkansas passed Act 900 requiring Pharmacy Benefit Managers (PBMs) to reimburse pharmacies within Arkansas at a price equal to or greater than a pharmacies wholesale cost while also setting forth an appeal procedure to challenge the rate of reimbursement. In holding Act 900 <u>did not</u> have an impermissible connection with an ERISA plan, the Court in *Rutledge* noted Act 900 was merely a form of cost regulation and did not "refer" to an ERISA plan. *Id.* "Act 900 does not act immediately and exclusively upon ERISA plans because it applies to PBM's whether or not they manage an ERISA plan. Indeed, the Act does not directly regulate health benefit plans at all, ERISA or otherwise." *Id.*

Most importantly regarding the case at issue, is the *Rutledge* court held requiring PBMs to reimburse pharmacies at or above their acquisition costs does not require [ERISA] plans to provide any particular benefit to any particular beneficiary in any particular way. It simply establishes a floor for the cost of the benefits the plans choose to provide. Fla. Stat. § 641.513(5) and Fla. Stat. § 627.64914(4) function in a similar manner in essentially "setting the floor" for the cost of emergency services provided by non-network providers. ERISA does not pre-empt a state law that merely increases the costs, however, even if plans decide to limit benefits or charge plan members higher rates as a result. *Rutledge* citing *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute").

The Defendant also argues that Plaintiff is seeking to "regulate" a self-funded ERISA plan and accordingly Florida Law has no application. Defendant, *again*, looks to *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1333 (11th Cir. 2014) to support this argument. The Defendant misinterprets the claims at issue in an effort to distort the actual facts and allegations in this case. This same argument was recently rejected in the Southern District of Florida by this Court who authored the opinion in *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1333 (11th Cir. 2014):

> "I also reject Defendant's argument that *America's Health Ins. Plans v. Hudgens,* 742 F.3d 1319 (11th Cir. 2014) supports the argument that Plaintiff's case is preempted by ERISA. In *Hudgens,* the Eleventh Circuit affirmed the district court's order preliminarily enjoining Georgia from enforcing a state law preempted by ERISA. The challenged provisions of the state law in *Hudgens* would have required "self-funded ERISA plans to process and pay provider claims, or notify claimants of claim denials, within fifteen or thirty days, depending on whether the claim is submitted electronically or conventionally." *Id.* at 1331. Thus, that law was preempted because it dealt with a state law that impermissibly set procedures regarding how ERISA claims would be processed. The situation in the present case is different for multiple reasons. First, this case is not challenging the legality of the relevant Florida law. Second, even if such a challenge was

>present, the applicable law deals with the rate at which a medical services provider should be reimbursed. This inquiry only arose after Defendant admitted that Plaintiff is entitled to compensation for provided medical services."

*Orthopaedic Care Specialists, P.L. v. United Healthcare Services, Inc.,* No. 9:19-CV-81378-Middlebrooks/Brannon on January 7, 2020.  The Defendant's reliance on *Hudgens* cannot support dismissal of Plaintiff's Complaint.

Defendants' reliance on *Surgery Center of Viera v. Cigna Health*, 2020 WL 4227428, *5 (M.D. Fla. 2020) is problematic given the specific facts of that case.  Notably omitted in the Defendant's Motion to Dismiss is the Court's holding that if Plaintiff prevailed it would require the Court to **determine coverage** "in accordance with the...terms of the [ERISA Plan]." *Id.*   Given that the Plaintiff in the case at bar is bringing independent statutory claims and the Defendants have <u>determined coverage exists</u> by issuing payment to Plaintiff, the claims at bar are distinct and separate from the Plan.  Plaintiff's claims in the case at bar are therefore not defensively pre-empted by ERISA.

This Court does not have subject matter jurisdiction over Plaintiff's claims based on preemption under the Employee Retirement Income Security Act ("ERISA"). The Eleventh Circuit, as well as other Courts of Appeal, have held that "rate of payment" actions, like the one here, which challenge the sufficiency of the amount of reimbursement for medical services, do not arise under ERISA. *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010); *see also Kelsey-Seybold Med. Group PA v. Great-West Healthcare of Tex., Inc.*, 611 F. App'x 841 (5th Cir. 2015) (reversing and remanding judgment of district court that ruled provider's breach of contract claim for failure to pay contractual rate was preempted by ERISA); *Montefiore Med. Ctr. v. Teamsters Local* 272, 642 F.3d 321, 331 (2d Cir. 2011); *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 530 (5th Cir. 2009); *Pascack Valley Hosp.*

*v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 403-04 (3d Cir. 2004); *United v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999).

In contrast, "[i]f a party is suing 'under obligations created by the plan itself, [instead of] under obligations independent of the plan and the plan member,' the alleged obligations implicate legal duties which are not entirely independent of ERISA, and thus are subject to complete preemption." *Gables Ins. Recovery,* 39 F. Supp. 3d 1259, 1265 (S.D. Fla. 2015) (quoting *Spring E.R., LLC v. Aetna Life Ins. Co.*, No. H-09-2001, 2010 U.S. Dist. LEXIS 13565, 2010 WL 598748, at *5 (S.D. Tex. Feb. 17, 2010)).[1]

While the Defendants' arguments regarding complete preemption fails, so does the argument Plaintiff's claims are defensively preempted. In *Sarasota County Public Hospital Board v. Blue Cross Blue Shield of Florida, Inc.,* 2021 WL 37605 (M.D. Fla 2021), the Trial Court expressly rejected the argument ERISA pre-empted claims brought under Florida Statute 641.513 and 627.64194 either completely or defensively. <u>ERISA seldom defensively preempts a contracted provider's state law claim against an insurer.</u> *Sarasota County Public Hospital Board v. Blue Cross Blue Shield of Florida, Inc.,* 2021 WL 37605 (M.D. Fla 2021) (*citing Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir. 1999) ("ERISA does not [defensively] preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage.")). The Court in *Sarasota County* specifically held

---

[1] In the *Gables Ins. Recovery* matter, the plaintiff was a collection agency which specifically pleaded in its complaint that "[n]either Plaintiff nor [SMC] has received payment for the medical services provided to the patient and the Defendant has not made payment, explained or justified the reason for its non-payment." *Gables*, 39 F. Supp. 3d at 1264. Accordingly, unlike this case, in *Gables*, the plaintiff's claims involved the *right to* payment on the face of the Complaint, and therefore implicated ERISA. Here, in contrast, Plaintiff's claims expressly include only medical claims that Coventry adjudicated as covered under their respective plans but underpaid, and thus which concern only the *rate of* payment. Plaintiff's claims do not implicate ERISA.

that interpretation of the ERISA plan at issue was not necessary and therefore Plaintiff's claims, as the claims in the case at bar, do not "relate" to an ERISA plan.

In *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238 (S.D. Fla. 2016), the District Court, under similar circumstances in a case involving Coventry Health Care of Florida, rejected Coventry's argument that the plaintiff's claims fell within the scope of ERISA. Similar to this case, in Sheridan, the plaintiff asserted breach of contract claims against Aetna and Coventry as a result of the defendants' failure to pay the plaintiff the full contractual amounts owing for medical services rendered by the plaintiff's physicians. *Sheridan*, 161 F. Supp. 3d. at 1242. Coventry and Aetna removed the case to federal court after Sheridan produced a spreadsheet identifying specific medical claims on the basis that once the spreadsheet was disclosed, it "became clear, for the first time, that Sheridan was disputing coverage determinations under both ERISA and FEHBA plans." *Id.* at 1243. In determining that the plaintiff's claims did not fall within the scope of ERISA, the court ruled that since the plaintiff was suing for breach of its agreement—not a denial of benefits—no interpretation of an ERISA regulated health plan was necessary. *Id.* at 1246. The same is true here and Plaintiff's complaint cannot be dismissed.

In this case, as in Sheridan, Defendants' argument of the "mere existence" of an ERISA plan and its improper attempts to mischaracterize, without support, the claims stated by Plaintiff in their Complaint[2]. While claims made by beneficiaries under those plans for a denial of benefits may be preempted, those are not the claims made by the Plaintiff in this Complaint. Plaintiff is not purporting to "stand in the shoes" of a plan beneficiary and sue Defendant for a denial of benefits. Tellingly, Defendants are unable to point to anything in the Complaint that states otherwise.

---

[2] See *Emergency Service of Zephryhills, P.A., et. al. v. Coventry Health Care of Florida, INC.*, 281 F.Supp.3d 1339 (S.D. Fla. 2017)(remanding action to State Court and finding the Complaint asserted independent state law claims exclusively and were not preempted by ERISA); *Premier Inpatient Partners, INC. v. Aetna Health and Life Insurance Company*, 371 F.Supp.3d 1056 (M.D. Fla 2019).

To the contrary, as the Plaintiff's Complaint makes clear, the Plaintiff is suing Defendants on their own behalf for its violation of independent statutory and quasi-contractual obligations owed to Plaintiff under Florida state law to pay them fair market value for the services the Plaintiff is obligated by law to provide. The legal claims at issue in this matter do not require an interpretation of an ERISA plan, as there is no issue relating to whether the claims are covered. As a result, Defendants fall woefully short of justifying dismissal of Plaintiff's claims on the basis of ERISA preemption.

The Defendants in this case already determined that the services provided by Plaintiff are covered and has issued payment, the dispute is whether Defendants have the right to deny full and complete payment to Plaintiff based upon facts that do not relate to issues of coverage. Simply put, the statute is expressly disconnected from the terms and provisions of any ERISA plan, as reimbursement is mandated to non-participating emergency medical providers. The self-funded nature of the plan is not a relevant basis for dismissal given the same arguments being made, and disregarded, in several of the opinions cited herein. Similar relief is not available under ERISA and therefore dismissal of Plaintiff's Complaint would be improper. *C.N. Guerriere, M.D. P.A. v. Aetna Health, Inc.*, 2007 WL 3528366 (M.D. Fla.); *Baptist Hospital of Miami, Inc., v. Wellcare of Florida, Inc.*, 2011 WL 2084003 (S.D. Fla.); *Adventist Health System/Sunbelt Inc., v. United & Blue Shield of Florida, Inc.*, 2009 WL 722303 (M.D. Fla.), *Orthopaedic Care Sepcialists, P.L. v. United, 2013 WL 12095594,* (S.D. Fla. March 4, 2013), *Hialeah Anesthesia Specialists, LLC. v. Coventry Health Care of Florida, Inc.* 258 F.Supp.3d 1323 (S.D. Fla. 2017), *Orthopaedic Care Specialists, P.L. v. Aetna Life Ins. Co.,* No. 9:19-CV-81380-Rosenberg/Reinhart on December 9, 2019, *Richard W. Kaplan, D.D.S., M.D., P.A. v. United Healthcare Services, Inc.*, No. 9:19-CV-81185-Dimitrouleas/Matthewman on December 31, 2019, *Orthopaedic Care Specialists, P.L. v. United Healthcare Services, Inc.,* No. 9:19-CV-81378-Middlebrooks/Brannon on January 7, 2020, *Orthopaedic Care Specialists, P.L. v. United*

*Healthcare Services, Inc.,* No. 9:19-CV-81429-Middlebrooks/Brannon on January 8, 2020, *Orthopaedic Care Specialists, P.L. v. Aetna Life Insurance Company*, 9:19-CV-81381-Altman/Brannon on February 10, 2020, *Richard W. Kaplan, D.D.S., M.D., P.A. v. Blue Cross and Blue Shield of Florida, Inc.*, No. 9:19-CV-81162-Smith on March 6, 2020, *Orthopaedic Care Specialists, P.L. v Blue Cross and Blue Shield of Florida, Inc.,* No. 9:20-CV-80418-Middlebrooks/Brannon on March 23, 2020.

In short, Plaintiff's Complaint sets forth the allegations that the Defendants' underpayments violated independent state law duties owed to Plaintiff – and not claims for benefits under ERISA plans. Therefore, the Defendants' argument for dismissal of this matter is not justified. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

**III.     Defendants' Argument for Dismissal of Count II Misconstrues Applicable Law**

The Complaint complies with the notice pleading standard with a short and plain statement of a claim for breach of an implied-in-fact contract showing entitlement to relief under Florida law. Implied-in-fact contracts are like express contracts where, instead of a written or oral agreement, the parties' conduct and surrounding circumstances lends voice to the parties' agreement. *See Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (discussing Florida law).

> The [Florida] supreme court described the mechanics of this process: a court should determine and give to the alleged implied contract the effect which the parties, as fair and reasonable [persons], presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.

*Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385−386 (Fla. 4th DCA 1997) (en banc) (citations omitted). "In these circumstances, the law implies the promise to pay a reasonable amount for the services." *Id*. at 386. Florida law does not require that the terms of an implied-in-fact contract be laid out with precision; instead, "a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id*. at 385.

Typically, an implied-in-fact contract arises when "a person performs services at another's request." *Id*. at 386. Consideration can take many forms, including services rendered, and may be received by either the promisor or a third-party. *See Real Estate World Fla. Comm., Inc. v. Piemat, Inc.*, 920 So. 2d 704, 706 (Fla. 4th DCA 2006); *see also Gem Broadcasting, Inc. v. Minker*, 763 So. 2d 1149, 1151 (Fla. 4th DCA 2000) ("A contract implied-in-fact can be enforced even where a defendant has received nothing of value."). Mutual assent is a requirement—again, determined based upon the parties' conduct. *Com. P'ship 8098*, 695 So. 2d at 385. Conduct is examined objectively, not by what each party meant or intended. *See, e.g.*, *Dye v. Tamko Building Products, Inc.*, 908 F.3d 675, 680−81 (11th Cir. 2018) (applying Florida law). Like oral and written contracts, an implied-in-fact contract in Florida requires only that a claimant plead: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). The Plaintiff has met its burden.

Several courts in Florida have denied motions to dismiss in cases with the same claim and similar facts as here—finding that a plaintiff has stated a claim for breach of implied-in-fact contract. For example, a hospital system no longer under contract with the defendant-insurer was permitted to pursue a claim for breach of implied in fact contract under Florida law for services provided to insured patients. *Baycare Health Sys. v. Medical Savings Ins. Co.*, 2008 WL 792061, at *7−8 (M.D. Fla. Mar. 25, 2008). The plaintiff in *Baycare* alleged that service was authorized, the parties communicated regarding billing, and the defendant issued partial payment that was a fraction of the billed charges. *Id.* at *7. The court in *Baycare* found that the claims were adequate to provide notice to the defendant under the *Twombly* standard because the defendant was aware that services were provided and that the hospital system would bill its full price absent an express contractual agreement. *Id*. at *8. The court considered immaterial that the services (consideration)

were provided to the patient. *Id.* Likewise, the court did not consider relevant that the patient requested the services instead of the insurer. *Id.*

An out-of-network medical laboratory brought several claims, including breach of implied-in-fact contract for services rendered to insureds of the defendant-insurer in Florida. *Nat'l Laboratories, LLC v. United Healthcare Grp., Inc.*, 2018 U.S. Dist. LEXIS 58328 (S.D. Fla. Apr. 3, 2018). The laboratory alleged conduct whereby the parties discussed billing, authorization, and submission of claims. *Id*. at *3−4. The court denied the motion to dismiss the implied-in-fact contract claim because the conduct as pled was adequate under Rule 8 and rejected the defendant's argument that lack of payment precluded the formation of a contract. *Id.* at *12−14.

Also, in *Lee Memorial Health System v. Medical Sav. Ins. Co.*, the court found that the plaintiff, a medical provider, pled sufficient facts to sustain a viable complaint alleging breach of implied-in-fact contract subject to Florida law against an insurer where the insurer authorized services to the patients treated by the medical provider, the provider billed the insurer its "reasonable and customary charges" for services rendered to insureds, and the insurer paid but a "fraction of the billed charges." 2005 WL 2291679, at *2−3 (M.D. Fla. Sept. 20, 2005). The court again found there were sufficient facts in the complaint because the insurer permitted insureds to use the provider's services and the provider billed the insurer for the services it provided. *Id.* at 4.

Taken as true and in the light most favorable to the Plaintiff, like in *Baycare Health,* the Complaint's allegations support a tacit agreement based on the parties' conduct. That the consideration went to the patient is not an issue under Florida contract law as stated by *Real Estate World Fla. Comm.* The parties communicated, and services were billed by the Plaintiff in expectation of compensation and only partially paid by the Defendant under circumstances where appropriate compensation was expected. Otherwise, the Defendant would not have partially paid the bill. The partial payment was significantly below both the reasonable value and the billed rate for services rendered and the Defendant is entitled to the difference between the amount paid and

the reasonable price. Since the parties have been unable to agree outside of litigation, Plaintiff now seeks judicial determination of a reasonable price.

In its Motion, the Defendant simply ignores the portions of Plaintiff's Complaint that defeat its argument. The Complaint alleges authorization, but it is not the sole fact that supports a tacit agreement between the Plaintiff and Defendant. Even assuming *arguendo* that authorization of the treatment was insufficient to invoke a promise to pay, then surely communication between the parties as evidenced by *sending a bill, processing the bill, choosing to pay the bill, and then actually sending payment* should be. Further, even if the Defendant subjectively believed it was paying the Plaintiff because of an intent to comply with its agreement with the insured, this subjective belief is not at issue. As numerous courts in Florida have held, it is the conduct between the parties when examined objectively, not subjective intent, that matters. *See, e.g.*, *Dye*, 908 F.3d at 680−81.

Further, courts have refused to dismiss similar cases where the plaintiff alleged authorization. *See, e.g.*, *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *4 (N.D. Cal. Oct. 10, 2017) (collecting cases). Courts have reasoned that authorization is a different process than verification. *Id.* Rather than solely relying on one fact, the Complaint is supported by other conduct and the surrounding circumstances to state an implied-in-fact contract claim. Although detailed allegations are not required, the Complaint does so anyway.

Enforcement of an implied-in-fact contract is described as dependent upon an "implied promise," *see Gem Broadcasting*, 763 So. 2d at 1151; but this promise is founded on the surrounding circumstances to *imply* a promise to pay the "reasonable value." *Id*. Thus, rather than requiring an *express and definite* promise like promissory estoppel, s*ee Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (3d DCA 2006), an implied-in-fact contract's consideration exists in the form of the services rendered—regardless of who received said services. *See Real Estate World*, 920 So. 2d at 706.

Plaintiff's Complaint states that the Defendant expressed its assent by authorizing the service, and by receiving, processing, and sending a partial payment—conduct that also breached the contract because the partial payment was below the reasonable value for the services rendered. The additional arguments raised by the Defendant require evidentiary rulings, and thus are beyond what is required at this pleading stage. This Court should not decide the merits of the case at this time.

Implied-in-fact contracts are inherently case-specific, and the facts of each case stand on their own. Florida Federal District Courts and courts in other states have deferred ruling on the merits of a claim of implied-in-fact contract until the summary judgment stage. *See, e.g.*, *Medical Mutual of Ohio v. Air Evac EMS, Inc.*, No. 1:16-cv-00080, at *8 (N.D. Ohio Feb. 28, 2018), [ECF No. 33] (refusing to determine as a matter of law on motion for judgment on the pleadings whether implied in fact contract was established when the defendant-insurer made a partial payment to plaintiff-air medical provider because it was a question of fact). In *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, the court denied the insurer's motion to dismiss an implied-in-fact contract. Regarding some of the same arguments the Defendant raises here, the court stated:

> Defendants argue that this course of conduct is insufficient to constitute an implied in fact contract, as there is no way to infer from Defendants' conduct that they intended to be bound by Plaintiff's alleged offer. However, this argument essentially attacks the merits of Plaintiff's claim, and this is inappropriate at the motion to dismiss stage.

2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007) (relying on *Com. P'ship 8098*, 695 So. 2d at 385 ("[A] fact finder must examine and interpret the parties' conduct to give definition to the unspoken agreement.")).

Several courts in this state have acknowledged that between the insurer, the insured, and an out-of-network provider, claims can exist between the insurer and the out-of-network provider; and, the law recognizes a claim based upon an implied-in-fact contract between the insurer and the

provider. *See, e.g.*, *Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc.*, 2018 WL 3640405, at *3 (M.D. Fla. July 20, 2018) (collecting cases) ("An "agreement" between the provider and insurer need not be express—it can be implied-in-fact."); *REVA, Inc. v. HealthKeepers, Inc.*, 2018 WL 3323817, at *4 (S.D. Fla. July 6, 2018).

Given that this litigation is in its infancy and that the parties have not had the opportunity to conduct discovery or develop the record for this Court, Plaintiff respectfully requests that this Court deny Defendant's Motion. Additionally, the arguments advanced by the Defendant to support dismissal of Count II of Plaintiff's Complaint are strikingly similar to those that were rejected when they advanced them in *Worldwide Aircraft Services, Inc. v. United Healthcare Insurance Company,* 2019 WL 497713, (M.D. Fla. February 8, 2019).

### III.  CONCLUSION

For the reasons set forth above, the Defendant has fallen short of providing this Court a valid basis to dismiss Plaintiff's claims in this matter. Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss for failure to state a cause of action, as Defendant repeatedly asserts. ERISA pre-emption, complete or defensive, is not applicable. Plaintiff respectfully request that this Court enter an order denying the Defendant's Motion to Dismiss, together with any further relief the Court deems just and proper. Leave to amend is requested in the event this Court grants any portion of Defendant's Motion to Dismiss.

### CERTIFICATE OF GOOD FAITH CONFERENCE

In accordance with S.D. Fla. L.R. 7.1(a)(3), counsel for Plaintiff has conferred with counsel for Defendant in a good faith effort to resolve the issues raised in the instant motion but the parties have not been able to agree.

*/s/ Tony Bennett, Esq.*
TONY BENNETT, ESQUIRE
Florida Bar No.:  40357

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing document was served on all counsel or parties of record on the Service List below by electronic service using CM/ECF.

>HICKS & MOTTO, P.A.
>Attorneys for the Plaintiff
>3399 PGA Blvd, Suite 300
>Palm Beach Gardens, FL  33410
>Telephone: (561) 683-2300
>Facsimile: (561) 697-3852
>tbennett@Hmelawfirm.com
>
>***/s/ Tony Bennett, Esq.***
>TONY BENNETT, ESQUIRE
>Florida Bar No.:  40357

## SERVICE LIST

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, Florida 33131
Telephone: (305) 374-5600
**Gera R. Peoples, Esq.**
gera.peoples@akerman.com
*Counsel for Defendant*